IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case Number 6:12-1339-JMC |
| ) | |
| v. ) | |
| ) | |
| $5,676,556.88 SEIZED FROM KEY ) | |
| BANK ACCOUNT NUMBER x-5131 ) | |

UNITED STATES' COMPLAINT FOR FORFEITURE *IN REM*

Comes now the United States of America, the Plaintiff in this matter, pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, and shows the Court the following in support of this Complaint for Forfeiture:

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction and venue over the claim by virtue of 28 U.S.C. §§ 1345, 1355, and 1395.

2.  On or about January 31, 2012, Special Agent James B. Motley, Jr., of the U.S. Secret Service obtained a seizure warrant and seized $5,676,556.88 (the "Defendant Funds") from Key Bank account number x-5131, pursuant to (1) 18 U.S.C. § 981(a)(1)(A) as constituting property involved in a violation of 18 U.S.C. § 1960, and (2) 18 U.S.C. § 1955(d) as constituting property involved in an illegal gambling business in violation of 18 U.S.C. § 1955(a) and pursuant to 18 U.S.C. § 984(a). The authority for issuing seizure warrants in this judicial district for the money held in account number x-5131, which is located in the state of New York, is found in 18 U.S.C. § 981(b)(3) and 28 U.S.C. § 1355(b)(1)(A), which provides that a forfeiture action may be brought

in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred.

3.      The Defendant Funds are currently being held in the Treasury Suspense Account, which is located in the Federal Reserve Bank in New York.

4.      The United States seeks forfeiture of the Defendant Funds pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions or attempted transactions in violation of 18 U.S.C. §§ 1956 and/or 1960; pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to violations of specified unlawful activities, to wit, 18 U.S.C. § 1960, 18 U.S.C. § 1344, and/or 18 U.S.C. § 1955(a); and/or, pursuant to 18 U.S.C. § 1955(d), as property used in violation of the provisions of 18 U.S.C. § 1955(a).

## KNOWN POTENTIAL CLAIMANTS

5.      The potential claimants known to the Government who may have or claim an interest in the Defendant Funds are:

a.      Denarius Financial Group
        1179, rue de la Montagne, Ste 101
        Montreal, Quebec, Canada
        H3G IZ2

Denarius has previously filed a Motion for the Return of Property.

b.      Sicuro Payment Solutions
        2455 Rue Guenette, Bureau 202
        Saint-Laurent Quebec, Canada,
        H4R 2E9

c.      Morningstar Party Supplies Inc.,
        101 N.E. 3rd Ave. Ste. 1500
        Ft. Lauderdale, FL 33301

d.  Guru Novelty Wholesale Inc.
    550 North Reo St., Suite 300
    Tampa, FL 33609

e.  Lingo Novelties Inc.
    759 Square Victoria, Ste. 200
    Montreal, Canada

f.  Sterling Expressions Inc.
    1228 E. 7th Ave. Ste. 200
    Tampa, FL 33605

g.  Nightshift Novelties
    One East Washington St., Ste 500
    Phoenix, AZ 85004

h.  Epsilist Inc.
    6755 RTE 132, Ste-Catherine,
    J5C 1B6, Quebec, Canada

i.  Nunavik Art Enterprises Inc.
    233 S Wacker Drive 84th Floor
    Chicago, IL 60606

j.  Millgreet Industries Inc.
    101 NE 3rd Ave Suite 1500
    Fort Lauderdale, FL 33301

k.  Bonodam Enterprises
    1950 Lafayette Road, Ste 201
    Portsmouth, NH 03801

**FACTS**

6.　　Denarius Financial Group ("Denarius"), a Canadian company based in Montreal, Quebec, through its president Rocco Piccolo and otherwise, represents that it is in the business of conducting foreign exchange transactions and wire payments for small to medium size businesses. Denarius charges its clients a fee per wire payment sent on the client's behalf. Typically, a client transfers funds to a Denarius account with the Royal Bank of Canada in Quebec. Denarius then transfers these funds and others to a Denarius account with Key Bank in New York. Based on instructions from Denarius, individuals at Key Bank wire funds to various accounts throughout the United States. At all times referenced herein, Key Bank was a financial institution, the deposits of which were and are insured by the Federal Deposit Insurance Corporation.

7.　　Upon information and belief, that Denarius is a money transmitting business facilitating millions of dollars in wire transfers, relating to online gambling, on behalf of Sicuro Payment Solutions and other entities. Denarius utilizes wire transfers to fund numerous U.S. bank accounts. From these accounts, gambling winnings are distributed to internet gamblers in the United States and in the District of South Carolina.

8.　　From June 15, 2011, through December 19, 2011, using Key Bank account number x-5131, Denarius sent $5,676,556.88 to no fewer than nine (9) U.S. bank accounts of known gambling processors (collectively, the "gambling front companies"), that have been or are active targets of U.S. Secret Service investigations. The nine (9) targets include: Morningstar Party Supplies Inc. (Morningstar), Lingo Novelties Inc. ("Lingo"), Sterling Expressions Inc. ("Sterling"), Guru Novelty Wholesale Inc. ("Guru"), Nightshift Novelties ("Nightshift"), Nunavik Art Enterprises

("Nunavik"), Millgreet Industries Inc. ("Millgreet"), Bonodam Enterprises ("Bonodam"), and Epsilist Inc. ("Epsilist").

9. In June 2011, Denarius funded accounts of Morningstar, Lingo, Sterling and Guru with four (4) wires totaling $123,782.88.

10. In July 2011, Denarius funded accounts of Lingo, Nightshift, Nunavik, and Sterling with seven (7) wires totaling $297,596.00.

11. In August 2011, Denarius funded accounts of Nunavik, Guru, and Morningstar with three (3) wires totaling $133,710.00.

12. In September 2011, Denarius funded accounts of Morningstar, Lingo, Guru, Nightshift, Millgreet, and Epsilist with thirty (30) wires totaling $1,313,602.00.

13. In October 2011, Denarius funded accounts of Morningstar, Lingo, Guru, Nightshift, Millgreet, Bonodam, and Epsilist with seventy-two (72) wires totaling $2,018,244.00.

14. In December 2011, Denarius funded accounts of Morningstar, Lingo, Nightshift, Millgreet, Bonodam, and Epsilist with seventeen (17) wires totaling $553,947.00.

15. Included as Attachment A to this Complaint is a spreadsheet with each individual wire payments made by Denarius to the nine (9) known gambling processors from June 2011 through December 2011.

16. The seizure in this case, which took place on or about January 31, 2012, proceeded under fungibility principles: property is subject to forfeiture if it is identical to otherwise forfeitable property, is located or maintained in the same way as the original forfeitable property, and not more than one year has passed between the time the original property subject to forfeiture was located or

maintained and the time the action commenced. 18 U.S.C. § 984(a). Where the property in an *in rem* action is funds deposited into a financial institution account, 18 U.S.C. § 984 allows the United States to forfeit any funds (i.e., "identical property) deposited into the subject account, so long as an action to forfeit these funds is commenced within one year of the offense giving rise to forfeiture. Under 18 U.S.C. § 984, the United States is not restricted to forfeiting only those funds traceable to the offense giving rise to forfeiture, so long as the forfeitable funds come from the same account as directly traceable funds.

## SECTION 1960 VIOLATIONS

17.     Under 18 U.S.C. § 1960(a) it is a crime to knowingly conduct, control, operate, or own "an unlicensed money transmitting business." Section 1960 constitutes a "specified unlawful activity" as defined under 18 U.S.C. § 1961(1)(B). Money transmitting "includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier." 18 U.S.C. § 1960(b)(2). The term "unlicensed money transmitting business" has three possible meanings in the statute. These three meanings are each separate violations of § 1960.

18.     The first is when the business affects interstate commerce and "is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or felony under state law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable." 18 U.S.C. § 1960(b)(1)(A).

19.     The second is when the business affects interstate commerce and "fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section."18 U.S.C. § 1960(b)(1)(B).

20.     The final possibility is when the business affects interstate commerce and "otherwise involves the transportation or transmission of funds that are known to the defendant, to have been derived from a criminal offense or are intended to promote or support unlawful activity." 18 U.S.C. § 1960(b)(1)(C).

21.     New York state law requires a license for money transmitters such as Denarius. Under § 641 of New York's banking law:

> No person shall engage in the business of selling or issuing checks, or engage in the business of receiving money for transmission or transmitting the same, without a license therefor obtained from the superintendent as provided in this article, nor shall any person engage in such business as an agent, except as an agent of a licensee or as agent of a payee; provided, however, that nothing in this article shall apply to a bank, trust company, private banker, foreign banking corporation licensed pursuant to article two of this chapter or foreign banking company authorized to operate pursuant to the International Banking Act of 1978 (12 USC 3101 et seq.), as amended, savings bank, savings and loan association, an investment company, a national banking association, federal reserve bank, corporation organized under the provisions of section twenty-five--a of an act of congress entitled the "Federal Reserve Act," federal savings bank, federal savings and loan association or state or federal credit union.

In interpreting this statute, the Second Circuit has observed that "New York state law provides that it is illegal to receive money for transmission, or to transmit money, without a license issued by the Superintendent of Banks." United States v. Velastegui, 199 F.3d 590, 594 (2d Cir. 1999).

22.     The New York State Department of Financial Services has no record of Denarius having ever been licensed as a money transmitter.

23.     Under § 650 of New York's banking law, "Any person who . . . engages in the business of receiving money for transmission or transmitting the same . . . without a license therefor obtained from the superintendent as provided in this article, shall be guilty of a Class A misdemeanor."  In addition, unlicensed transmission of $250,000 during any one-year period is a felony offense under § 650.  Hence, state law punishes the lack of a license by a misdemeanor and/or felony.

24.     Under 31 U.S.C.§ 5330(a)(1), "Any person who owns or controls a money transmitting business shall register the business . . . with the Secretary of the Treasury. . . ."

25.     Denarius has not registered the business with the Secretary of the Treasury through the Financial Crimes Enforcement Network (FinCEN) as required. Denarius has been using account number x-5131 for its money transmitting business since at least in or about May 1999 to the present.

26.     Denarius had actual or constructive knowledge that the funds it transmitted on behalf of Sicuro Payment Solutions were derived from a criminal offense or were intended to promote or support unlawful activity.

27.     The wires listed in Attachment A affected interstate commerce.

## SECTION 1955 VIOLATION

28.     Under 18 U.S.C. § 1955, a person is prohibited from conducting, financing, managing, supervising, directing or owning an illegal gambling business. That statute defines an

"illegal gambling business" as one that: "(I) is a violation of the law of a State or political subdivision in which it is conducted; (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day. Section 1955(a) constitutes a "specified unlawful activity" as defined under 18 U.S.C. § 1961(1)(B).

29. Online gambling and the online gaming industry is essentially a virtual casino. The websites, which act as the casinos or sports books, are located on servers all over the world, typically outside of the United States. The gamblers are also located all over the world. The gambling sites will accept funds from any person as long as they have access to the internet. To take bets and process payments, the gambling industry has created a complex web to hide prohibited transactions from law enforcement. For example, when a gambler requests a payout, the online casino often forwards the request to a shell company disguised as a legitimate business that then cuts a check or wires money directly to the gambler. In other cases, gambling companies partner with money transmitters, such as Denarius, to transfer funds to accounts so a shell company or processing company can remit payment to the online gamblers. Reliable and efficient payment processing is essential to the financial success of any gaming operator who desires to grow its customer base. A solid payment reputation encourages continued gambling by existing customers and is important to attract new online gamblers.

30.     Gambling is illegal in South Carolina.  See generally, S.C. Code Ann. §§ 16-19-30 & 16-19-40.  This prohibition includes a person who aids or abets the receiving, registering, or forwarding of money bet or wagered.

31.     Denarius has more than five employees in its business.

32.     Denarius claims to have a volume of between $500 million and $1 billion per year over the past 12 years.  Denarius has been in continuous operation over the past 12 years.

33.     In November 2011, two gamblers located in the District of South Carolina received checks for gambling proceeds from gambling processor Nightshift. The Nightshift account from which these checks issued was funded by nine incoming wires from account x-5131.  These wires were transmitted between September 7, 2001, and November 25, 2011.

34.     Through the activities described herein, Sicuro Payment Solutions, Denarius, and the gambling front companies were involved in conducting, financing, managing, supervising, directing, and/or owning all or part of an illegal gambling business, and/or in aiding or abetting the conducting, financing, managing, supervising, directing, and/or owning such illegal gambling business, in violation of 18 U.S.C. § 1955.  The Defendant Funds represent property used in violation of the provisions of 18 U.S.C. 1955(d), and are subject to seizure and forfeiture.

## SECTION 1344 VIOLATION

35.     Under 18 U.S.C. § 1344, it is against federal law to (1) knowingly execute a scheme or artifice to defraud a financial institution with deposits insured by the federal government; and (2) to do so with the intent to defraud.  Section 1344 constitutes a "specified unlawful activity" as defined under 18 U.S.C. § 1961(1)(B).

36. Through the activities described herein, Sicuro Payment Solutions, Denarius, and the gambling front companies devised a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises in that they participated in a scheme to deceive financial institutions and other financial intermediaries into processing and authorizing payments to and from a gambling business and United States gamblers by disguising the transactions to create the false appearance that they were unrelated to gambling, and thereby to obtain money of, or under the custody and control of, financial institutions.

## SECTION 1956 VIOLATION

37. Pursuant to 18 U.S.C. §§ 1956(b)(7)(A) and 1961(1)(B), operating an illegal gambling business in violation of 18 U.S.C. 1955(a) constitutes a "specified unlawful activity" ("SUA"). The commission of bank fraud in violation of 18 U.S.C. § 1344 is also a SUA under 18 U.S.C. § 1961(1)(b).

38. The Defendant Funds constitute property involved in, or fungible to, transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(I), and/or 1956(a)(1)(B)(I), or are property traceable to such property, and are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1).

## CONCLUSION

39. Denarius has operated as an unlicensed money transmitting business, and has aided and abetted others in doing so, in violation of 18 U.S.C. § 1960, and has used Key Bank account number x-5131 in furtherance of violations of 18 U.S.C. § 1960.

40.     Denarius has operated an illegal gambling business, and has aided and abetted others in doing so, in violation of 18 U.S.C. § 1955, and has used Key Bank account number x-5131 in furtherance of such violations.

41.     Denarius has engaged in bank fraud, and has aided and abetted others in doing so, in violation of 18 U.S.C. § 1344, and has used Key Bank account number x-5131 in furtherance of such violations.

42.     The Defendant Funds are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions or attempted transactions in violation of 18 U.S.C. §§ 1956 and/or 1960; pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to violations of specified unlawful activities, to wit, 18 U.S.C. § 1960 and/or 18 U.S.C. § 1955(a); and/or, pursuant to 18 U.S.C. § 1955(d), as property used in violation of the provisions of 18 U.S.C. § 1955(a).  The Defendant Funds are further subject to forfeiture pursuant to 18 U.S.C. § 984, as fungible property involved in such violations located or previously located in Key Bank account number x-5131.

WHEREFORE, the United States prays:

(1)     That the Court forfeit the Defendant Funds to the United States of America.

(2)     That the Court award the Plaintiff the costs of this action; and

(3)     That the Court grant such other relief as the Court deems just and proper.

This 21st day of May, 2012.

Respectfully submitted,

WILLIAM N. NETTLES

                UNITED STATES ATTORNEY


BY:    s/William J. Watkins, Jr.
        WILLIAM J. WATKINS, JR.
        Assistant U.S. Attorney
        Federal I.D. No: 7863
        Greenville, SC 29601
        (864) 238-2100


        s/Stanley D. Ragsdale
        STANLEY D. RAGSDALE, #3197
        Assistant United States Attorney
        1441 Main Street, Suite 500
        Columbia, South Carolina  29201
        Telephone: (803) 929-3000


        s/Leesa Washington
        LEESA WASHINGTON
        Assistant U.S. Attorney
        Federal I.D. No: 6973
        Greenville, SC 29601
        (864) 238-2100